## McCARTHY v. L. ADLER BROS. & CO.

### (District Court, S. D. New York. November 9, 1915.)

COPYRIGHTS ☞67—SUIT FOR INFRINGEMENT—EQUITIES OF PARTIES.

Defendant company, a manufacturer of clothing, desiring to issue a booklet advertising its products, through one of its members submitted to two artists, one of whom was complainant, the same general design for a picture to be placed on the cover, leaving the details to the artists. Complainant copyrighted his sketch, which was not accepted. The one accepted and used was necessarily similar in general design, but different in detail. *Held:* (1) That defendant's picture did not infringe the copyright; and (2) that under the facts a court of equity would not subject defendant to the severe penalties of the copyright law for the use for commercial purposes of a picture of which it was to large extent the originator.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 64; Dec. Dig. ☞67.]

In Equity. Suit by Clarence Joseph McCarthy against L. Adler Bros. & Co. Decree for defendant.

Lucius E. Varney, of New York City, for complainant.
Julius Henry Cohen, of New York City, for defendant.

MAYER, District Judge. The facts in this case are comparatively simple, and, as the record stands, there seems to be no conflict of testimony on any material point. The plaintiff, a young artist, obtained an interview with Mr. Adler, a member of the defendant company. Mr. Adler was contemplating putting out a booklet, advertising the clothing manufactured by defendant. Mr. Adler seems to have had his own ideas, in a general way, as to an artistic cover for this booklet. An agreeable presentation to the public is important in a booklet advertising merchandise of this kind. In brief, Mr. Adler's idea was

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the representation of a stage, on which a "show" was about to be opened or commenced. That idea is illustrated by the introduction to the booklet, which is:

"All the world's a stage. Play your part in the great drama of life in correct costume."

Mr. Adler gave to Mr. McCarthy every essential feature of the proposed artistic cover, and not only gave to him the broad general thought of a stage on which a performance or show was about to be opened, but also gave to him certain important details. Those details included, among other things, an orchestra in the lower left-hand corner, the representation of a shield, a curtain, and the label or trademark of the defendant company. Mr. Adler also gave to Mr. McCarthy the choice of deciding whether there should be a man in formal evening dress or a Pierrot on the stage; the obvious purpose of this figure being to announce or introduce to an imaginary audience the performance which would take place upon the stage, and presumably would begin as soon as the curtain was raised.

There had already been published, among other things, two covers of the American Magazine, one for the month of January, 1914, and the other for the month of August, 1914; each of these covers being the work of Louis Fancher, concededly a man of high standing in this branch of artistic effort. In the January, 1914, cover was the representation of a spotlight and a part of an orchestra. The part of the orchestra had three figures, one of whom was the leader of the orchestra. In the August, 1914, cover there was the representation of a stage, with the curtain slightly opened, and the announcer a Pierrot.

After Mr. McCarthy had made his drawing in accordance with these general instructions, this drawing was submitted to Mr. Adler, and for some reason or other ultimately was not satisfactory to Mr. Adler. Some dispute between the plaintiff and the defendant company arose as to the compensation which was to be accorded to the plaintiff, there being some difference of opinion about the agreement; and from his point of view, in order to protect himself, the plaintiff caused his production to be copyrighted.

The defendant submitted by correspondence to the Mr. Fancher above referred to instructions as to the same subject-matter. These instructions contained the same limitations as were given to Mr. McCarthy, in respect of the space to be occupied, a necessary limitation in view of the size of the booklet; and these instructions likewise required, as would be entirely natural, that the label or trade-mark of the defendant concern should appear upon the picture to be drawn by Fancher, and in respect of details Fancher was permitted to exercise his own judgment.

In view of the previous work of Fancher, it was quite natural that he should finally conclude that a Pierrot would be a more attractive figure than a man in evening clothes. Fancher treated the orchestra in an entirely different way, not merely as to perspective, but he introduced a leader, which to my mind, from a layman's standpoint, was one of the elements that made his representation more attractive than that of McCarthy, and the leader was obviously his own idea, as ap-

pears from the fact that he used a leader of the orchestra in the January American Magazine.

Of necessity, with the general instructions that were given, and the liberty to both of the artists in respect of detail, there was not very much room for general variation. The scheme was the same scheme in both instances, and did not originate with either of the artists, but originated in the mind of this business man, who had his own ideas as to what would be effective for advertising purposes. The carrying out of the detail was a matter that one would expect would be left to the artist, and was left to the artist. From my point of view the difference in the detail is substantial; but, even if it had been closer, I think the result would be the same, because of the limited character, both in space and in theme, of the subject-matter to be treated.

If it be assumed, for the purpose of the argument, that Mr. McCarthy's composition was copyrightable, then by the same token it must be assumed that Mr. Fancher"s composition was an independent effort. Each of these compositions had a common source, and it is the settled law in copyright that, where two men work independently from a common source and produce different results, neither infringes upon the other.

I have had the advantage of seeing the witnesses in this case, and therefore have exercised my judgment as to the truth of their statements upon the stand, and I am entirely satisfied, from the standing of Mr. Fancher in the art, from the prior work of his own which has been introduced in evidence, and from the appearance that he made upon the stand, that he is stating the absolute truth when he says that his production was an independent effort, from the same general instructions as those which were given to Mr. McCarthy. I think that in no manner did he copy Mr. McCarthy, nor do I think that he intended to copy Mr. McCarthy. And, therefore, if it be conceded, solely for the purpose of argument, that Mr. Carthy's composition was copyrightable, I find no infringement.

But, further than that, I am impressed by the suggestion of counsel for the defendant that the case may go off on another point. The suit is in equity, and I should regard it as a very dangerous doctrine to hold, in the circumstances, that a defendant might be gravely penalized where, as a business man, desirous of producing a useful cover for a commercial purpose, he lays the same general proposition before two artists, and then, when he accepts what seems to him to be the better execution of his idea, he should be subjected to the serious penalties which Congress has imposed in the very laudable desire to protect authors, musicians, artists, and other men of the professions whose work is copyrightable. It is conceded in the case that, had Mr. Carthy received the sum of $150, which he said was the agreed price, which on this record is not controverted, the work or composition would have belonged to the defendant company. In equity, and from the ordinary everyday standpoint of what is fair and right, that would be the compensation to which he is entitled, and in view of the fact that the same composition was not used, but one which in my opinion is so substantially different as not to infringe, it would be flying, in

my judgment, in the face of equity, to allow a recovery under the copyright law under the circumstances.

For the reasons I have briefly outlined, I dismiss the bill—first, because there is no infringement; and, second, for want of equity.